UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY McNAIR,

                Plaintiff,

-against-

HARLEM HOSPITAL MEDICAL
DIRECTOR; CEO JANE/JOHN DOE,
HARLEM HOSPITAL RONALD H. BROWN
BLDG.; PSYCHIATRIST DR. ADESOKAN,

                Defendants.

19-CV-0203 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act, asserting that Defendants denied him medications for his mental illness. By order dated April 22, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth in this order, the Court dismisses this action and grants Plaintiff thirty days' leave to replead.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff brings this action against three defendants from Harlem Hospital: the CEO, the Medical Director, and Dr. Adesokan – a psychiatrist. The following facts are taken from the complaint: on March 17, 2018, after serving eleven months for parole violation, Plaintiff was released from Auburn Correctional Facility. Since the age of nine, Plaintiff has suffered a "persistent mental illness" and taken various medications for anxiety, major depression, schizoaffective disorder, and other psychiatric conditions. Before his incarceration, Plaintiff had obtained anxiety and antipsychotic medications from Harlem Hospital, but since his release from prison, Defendants have "deliberately denied him those medications" despite their awareness of his mental illness. (ECF No. 2 at 5.) )[1] As a result of being off his medications, Plaintiff was hospitalized at several other hospitals "for suicidal [] and homicidal ideations." (*Id*.)

Plaintiff seeks an order directing Defendants to provide him with "psychotropic medications" and monetary damages. (*Id*. at 5-6.)

## DISCUSSION

**A.     Claims under Section 1983**

Plaintiff brings this action under 42 U.S.C. § 1983, asserting that Defendants violated his federal constitutional rights by denying him psychotropic medications at Harlem Hospital. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the

---

[1] Citations to the complaint refer to the pagination generated by the Court's electronic case filing system (ECF).

2

Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Harlem Hospital is operated by the New York City Health+Hospitals (H+H), which is a public benefit corporation created by New York State law. *See* N.Y. Unconsol. Law § 7382; *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). As a municipal corporation, H+H, its hospitals, and employees are state actors for the purposes of § 1983. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); *Mejia v. NYC Health & Hosp. Corp.*, No. 16-CV-9706, 2018 WL 3442977, at 5 (S.D.N.Y. July 17, 2018). H+H has the capacity to be sued under state law. *See* N.Y. Unconsol. Law § 7385(1).

The Court now considers whether Plaintiff's assertions against Defendants state a § 1983 claim for a constitutional violation. The Due Process Clause of the United States Constitution protects "the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), and has been interpreted as "a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Due Process Clause does not impose "liability whenever someone cloaked with state authority causes harm." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 848. Moreover, there is no constitutional "right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 489 U.S. at 196.

But the United States Court of Appeals for the Second Circuit has recognized two exceptions to the general rule that the government does not have a general duty under the Constitution to protect an individual from harm: (1) when a governmental entity has an obligation to provide such protection "because of a special relationship," or (2) if "the governmental entity itself has created or increased the danger to the individual." *Ying Jing Gan*

3

*v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (citations omitted). The distinction between the two categories is that "'special relationship' liability arises from the relationship between the state and a particular victim, whereas 'state created danger' liability arises from the relationship between the state and [a] private assailant." *Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005). Even if a plaintiff falls within one of these two exceptions and can demonstrate that the defendants have a constitutional obligation to protect him, he must also "show that the defendants' behavior was 'so egregious, so outrageous, that it may fairly be said to shock the conscience.'" *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quoting *Lewis*, 523 U.S. at 848 n.8).

Plaintiff's claims do not implicate the "state created danger" exception because he does not allege facts suggesting that Defendants created or increased a danger he faced from a third party. *See id*. at 157. The Court therefore addresses only the "special relationship" exception.

Plaintiff appears to contend that because Defendants were aware of his mental illness and he previously received treatment and obtained medications from Harlem Hospital before his incarceration, he had a special relationship with the hospital entitling him to receive psychotropic medications.

A special relationship may arise "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 200. For substantive due process purposes, "involuntary custody" is generally "the linchpin of any special relationship exception." *Matican*, 524 F.3d at 156 (collecting cases). The Second Circuit has recognized that "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child" as imposing an affirmative duty on the government to protect and care for an individual. *Ying Jing Gan*, 996 F.2d at 533. While a state's duty to provide for care and safety generally ends when an individual

4

is no longer in custody, *see DeShaney*, 489 U.S. at 201, courts have suggested that a state may have a limited duty under certain circumstances for the continuing care and safety of a person released from custody, especially if that individual's freedom is still "'somewhat curtailed,' such as when the [s]tate has legal custody of the individual, even if it does not have physical custody," *Ciccone v. Ryan*, No. 14-CV-1325 (NSR), 2015 WL 4739981, at *3 (S.D.N.Y. Aug. 7, 2015); *see Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir. 2005) ("A parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed."); *see also Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999) (the state owed a duty to a parolee requiring medication beyond his release); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) ("The State has a duty to provide medical services for an outgoing [paroled] prisoner who is receiving continuing treatment at the time of his release for the period of time reasonably necessary for him to obtain treatment on his own behalf."). *But see George v. Rockland State Psychiatric Ctr.*, No. 10-CV-8091 (NSR), 2014 WL 5410059, at *8 (S.D.N.Y. Oct. 23, 2014) (finding that a special relationship did not exist between parolee and state where parolee "was free to find his own medical treatment and there [was] no evidence that he was required to receive treatment [at a] specific[ ] [hospital]"); *McGhie v. Main*, No. 11-CV-3110 (NGG) (JO), 2011 WL 4852268, at *5 (E.D.N.Y. Oct.12, 2011) (parole officer did not have duty to provide plaintiff with mental health treatment since plaintiff was not incarcerated or institutionalized and was free to find own treatment). Under certain circumstances, a special relationship may also exist for a limited period of time between the state and an individual released from custody whose liberty is no longer curtailed. *See Charles v. Cnty. of Orange, N.Y.*, No. 16-CV-5527 (NSR), 2017 WL 4402576, at *9 (finding that a special relationship did exist

for a limited period of time between the state and civil detainees released from immigration detention, who required mental healthcare care upon their release).

Here, Plaintiff's assertions that the Harlem Hospital Defendants denied him medications for his mental illness are insufficient to state a constitutional claim. Plaintiff does not have a general right to medical care, and he fails to allege the existence of a special custodial or other relationship between himself and Defendants that would suggest an obligation on their part to provide him medications. S*ee, e.g., Henry v. New York City Hosp. & Health Corp.*, No. 00-CV-2537 (JSM) (AJP), 2000 WL 858345, at * 1 (S.D.N.Y. June 28, 2000) (an individual who was not incarcerated at the time of his treatment could not assert constitutional claims stemming from medical treatment he received at Harlem Hospital and Bellevue Hospital). Plaintiff's § 1983 claim that Defendants deliberately denied him medications is therefore dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Claims under the ADA and Rehabilitation Act**

Plaintiff also invokes the ADA and the Rehabilitation Act but does not specify the nature of his claims under those statutes. Construing the complaint liberally, Plaintiff may be asserting that Defendants denied him a reasonable accommodation or subjected him to discrimination because of his disability in violation of Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).[2] But Plaintiff does not allege any facts supporting a claim under Title II of the ADA or the Rehabilitation Act.

---

[2] Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Claims under the ADA and Rehabilitation Act are analyzed similarly. *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). To state a claim under both statutes, a plaintiff must show that he has a qualified disability, that the defendants are subject to the statutes, and that he was denied access to covered services, programs, or activities because of his disability. *Id*. Here, even if the Court assumes that Plaintiff suffers from a qualified disability, he does not allege any facts suggesting that Defendants failed to reasonably accommodate that disability or denied him access to services because of that disability. Plaintiff's claims under the ADA and the Rehabilitation Act must also be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    Leave to Amend**

In an abundance of caution and in light of the Second Circuit's direction to provide a plaintiff an opportunity to amend the complaint unless it would be futile for the Plaintiff to do so, *see Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011), the Court grants Plaintiff thirty days' leave to submit an amended complaint to state a claim for relief. In the amended complaint, Plaintiff must allege facts showing that a special relationship existed between him and the Defendants, which created an obligation on their part to provide him psychotropic medications. Plaintiff must also assert sufficient facts to support a disability discrimination claim under the ADA and the Rehabilitation Act by identifying the nature of his disability and providing facts suggesting that the defendants discriminated against him because of that disability.

Should Plaintiff submit an amended complaint in which he states a federal claim, the Court will then determine whether to exercise supplemental jurisdiction over any state-law

claims Plaintiff seeks to raise. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no federal claims remained).³

**CONCLUSION**

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff thirty days' leave to file an amended complaint. The Clerk of Court is instructed to terminate all other pending matters.

The Clerk of Court is further directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   May 17, 2019
           New York, New York

                                                  COLLEEN McMAHON
                                                  Chief United States District Judge

---

³ Plaintiff has filed numerous civil rights actions in federal courts. He is barred under 28 U.S.C. § 1915(g) from filing *in forma pauperis* (IFP) cases as a prisoner unless he can assert that he is under imminent danger of serious physical injury. *See McNair v. Annucci*, No. 17-CV-0198 (CM) (S.D.N.Y. Feb. 10, 2017). The Court has also warned Plaintiff under 28 U.S.C. § 1651 that further meritless, duplicative, or frivolous litigation in this Court could result in an order barring him from filing new civil actions IFP without prior permission. *See McNair v. State of N.Y. Office of the Medicaid Inspector*, No. 14-CV-8269 (LAP) (ECF No. 6 at 5) (listing cases). The Court reiterates that warning.